STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0105

JARED ARTHUR CUNNINGHAM

VERSUS

**BORDEN DAIRY COMPANY OF TEXAS, LLC,
DAIRY FARMERS OF AMERICA, INC.,
ENTERGY LOUISIANA, LLC AND
CHUBB CUSTOM INSURANCE COMPANY**

Judgment Rendered: **NOV 2 0 2024**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court Docket Number C681901, Sec. 22

Honorable Beau Higginbotham, Judge Presiding

* * * * * * *

L. Clayton Burgess                    Counsel for Plaintiff/Appellant,
Liza R. Trahan                        Jared Arthur Cunningham
Cole H. Delcambre
Lafayette, Louisiana


John A. Braymer                       Counsel for Defendant/Appellee,
Ryan N. Ours                          Entergy Louisiana, LLC
Baton Rouge, Louisiana

* * * * * * *

**BEFORE: GUIDRY, C.J., PENZATO AND STROMBERG, JJ.**

**PENZATO, J.**

Plaintiff, Jared Cunningham, appeals the trial court's September 25, 2023 judgment granting a motion for summary judgment in favor of defendant, Entergy Louisiana, LLC. After *de novo* review of the summary judgment record, we affirm.

## FACTS AND PROCEDURAL HISTORY

Jared Cunningham sustained electrical shock injuries on July 2, 2018, when the crown of his head came in close contact with (or contacted) a high voltage electrical distribution line owned by Entergy Louisiana, LLC. The distribution line was part of Entergy's electrical facilities housed on the roof of an abandoned building owned by Borden Dairy Company of Texas, LLC, located on Florida Blvd. in Baton Rouge.[1]

Mr. Cunningham filed suit against Entergy and Borden in April 2019, seeking personal injury damages.[2] Mr. Cunningham maintained that he was lawfully on Borden's premises to inquire about and respond to a job opening when "suddenly and without warning" he was "electrocuted by an arc flash from the electricity supplied to the property by Entergy[.]"[3] The petition alleged that Borden's premises was unsafe and in deplorable condition, serving as "home to the homeless and drug addicts of Baton Rouge." According to Mr. Cunningham, Entergy was aware that its electrical "substation" was supported by, connected to, and surrounded by premises that were defective and in disrepair. Mr. Cunningham asserted causes of action for negligence, gross negligence, and premises liability against Entergy. The petition pertinently alleged that Entergy was liable for failing to disable, cut off, and/or turn

---

[1] Six transformers were originally installed on Borden's roof in 1983 to provide electrical service to the premises. Borden eventually stopped processing milk at the Florida Blvd. location, and Entergy reduced the number of energized transformers within its facilities. Borden continued to operate a mechanic shop and charging stations on its premises for the trucks hauling milk. One transformer remained operable within Entergy's facilities at Borden at the time of Mr. Cunningham's incident.

[2] ACE American Insurance Company, Borden's insurer, is also a defendant, substituted for Chubb Custom Insurance Company.

[3] Mr. Cunningham's allegations against Borden are not pertinent to this appeal and are not discussed.

2

off the electricity to Borden's premises and was also liable for the "ruinous condition and deterioration of its power lines and other instrumentalities" on Borden's premises.

On May 31, 2023, after the close of discovery, Entergy filed a motion for summary judgment, seeking to dismiss all causes of action asserted against it. Entergy contended that Mr. Cunningham could not satisfy "any element of any claim against Entergy." Focusing on Mr. Cunningham's negligence and gross negligence causes of action, Entergy alleged no evidence exists to satisfy the duty and legal cause elements of the duty-risk analysis.[4] Entergy further asserted its facilities did not present an unreasonable risk of harm; therefore, Mr. Cunningham likewise could not succeed on a premises liability cause of action. Entergy supported its motion with deposition testimony from Mr. Cunningham and Richard Tholburn, Entergy's line superintendent at the time of Mr. Cunningham's incident.[5] Entergy also relied on an affidavit and expert report prepared by Ronald A. May, P.E., an electrical engineer. See La. C.C.P. arts. 966(A)(4)[6] and 967(A).

Photographs of Entergy's facilities were attached to Mr. Cunningham's deposition and are included with Entergy's summary judgment evidence. These photographs reflect the vast network of electrical lines, transformers, and specialized electrical equipment within Entergy's roof-top facilities, and the fence enclosing it all:

---

[4] Both ordinary and gross negligence are analyzed under a duty-risk analysis. *Listach v. West Baton Rouge Parish School Board*, 2021-0079 (La. App. 1st Cir. 6/9/21), 328 So.3d 450, 455, *writ denied*, 2021-00982 (La. 11/3/21), 326 So.3d 887.

[5] Mr. Tholburn's name is also spelled "Tholborn" in the record.

[6] Louisiana Code of Civil Procedure Article 966 was amended by La. Acts 2023, No. 317, § 1; La. Acts 2023, No. 368, §1 (eff. Aug. 1, 2023). The substance of these amendments is immaterial to our resolution of the issues presented in this appeal.





During his deposition, Mr. Cunningham testified that he and a friend, Matthew Todd Kelly, saw online postings for job openings at Borden, which listed the Florida Blvd. address. At approximately 6:00 pm, Mr. Cunningham and Mr. Kelly parked near Borden and saw a truck going behind the building and heard people there. Mr. Cunningham acknowledged Borden's premises was visibly abandoned and "in disrepair," with overgrown vegetation and graffiti on the building. Nevertheless, Mr. Cunningham and Mr. Kelly entered Borden's premises through a "knocked-down" gate, hoping to "talk to a worker to find out about the jobs[.]" This is Mr. Cunningham's last memory before waking up in the hospital following his electrical shock. Mr. Cunningham does not know where he was on Borden's premises when he was injured, has no recollection of being on the roof or of being injured, and cannot explain why he was on the roof where Entergy's electrical facilities are located.

On July 3, 2018, the day after Mr. Cunningham's incident, Mr. May and Mr. Tholburn inspected Entergy's facilities. In his affidavit and attached report, Mr. May explained that Entergy's facilities, which he referred to as a "transformer yard," are accessed through Borden's building, up a metal staircase, and through a gate at the top of the staircase, which is usually locked. Mr. Tholburn testified that, prior to July 2018, he was last on Borden's premises in early October 2017. Mr. Tholburn recalled that, when he visited in October 2017, the gate leading to Entergy's facilities was locked, and he locked the gate when he left. Only Entergy employees have a key to the lock. When Mr. May and Mr. Tholburn inspected the area after Mr. Cunningham's incident, the gate was unlocked and unlatched. The lock was not in the gate's locking mechanism and was later found and observed to be cut and discarded. Mr. Tholburn has no knowledge regarding who unlocked the gate between his visit in October 2017 and the date of Mr. Cunningham's incident in July 2018.[7]

The gate is part of a fenced enclosure – specifically, a six-foot chain link fence with a three-strand barbed wire extension – that houses Entergy's roof-top facilities. A 13,200/7,620-volt, 3-phase distribution line is routed overhead to a pole adjacent to Borden's building. From this pole, the distribution is routed with underground conductors through a rigid metal conduit across the roof to the fenced area containing six transformers. The energized buswork is approximately 10 feet above the ground, more than the applicable National Electrical Safety Code (NESC) requirement. Mr. Tholburn explained the buswork ties all six transformers together to provide the proper electrical load to the customer (Borden).

A sign that reads "DANGER HIGH VOLTAGE" is posted on the gate and on each side of the fenced area. According to Mr. May, "DANGER" is written in white

---

[7] During his July 3, 2018 investigation, Mr. Tholburn observed that copper wires were cut and missing from within Entergy's facilities. Mr. May similarly observed what he believed to be "[e]vidence of copper theft" from Borden's premises and Entergy's facilities on July 3, 2018. Various copper buswork had been cut and removed from Entergy's facilities. Mr. May also observed hand tools and other items "associated with copper theft" inside Entergy's fenced area.

5

with a red background, and "HIGH VOLTAGE" appears in black letters with a white background. A black and white photo of the described warning sign is included in Entergy's summary judgment evidence as an attachment to Mr. Cunningham's deposition:



Mr. May confirmed the enclosures surrounding Entergy's equipment are consistent with the type of construction around a substation and meet applicable NESC requirements for enclosed equipment.

Mr. May explained Mr. Cunningham had to get within one-fourth inch of the high voltage distribution line, because this voltage level will only arc through the air at less than one-fourth inch. Mr. May opined Mr. Cunningham entered Entergy's fenced area through the gate with the posted "DANGER HIGH VOLTAGE" sign, climbed onto Entergy's equipment (either the buswork and/or the transformers), then raised his head into the 7,620-volt distribution line in the buswork above the transformers. After the electric shock, Mr. Cunningham fell and sustained injuries to his face and mouth. Mr. May observed the injuries to the crown of Mr. Cunningham's head and balls of his feet are consistent with one "raising up" and contacting a high voltage distribution line with the crown of his head. Mr. Cunningham's contact with the energized line caused current to flow through his body and out of his feet and left side.

Mr. Tholburn similarly testified that someone must make physical contact with the lines to sustain an electrical shock. He stated there is no way to contact the

lines without gaining access to the fenced area and getting higher than the transformers, much taller than a standing man.

Mr. Tholburn testified concerning Entergy's knowledge of the condition of Borden's building before Mr. Cunningham's incident. Mr. Tholburn visited Borden's premises in early October 2017 to check on the condition of the building, which Entergy's employees had to access to work on Entergy's facilities. Mr. Tholburn observed that Borden's building was in "bad shape." It was abandoned; there were "water leaks everywhere," lots of trash, and the appearance of homeless people living there. Mr. Tholburn noticed that Entergy's employees had to "walk through a pretty good chunk of the building to get to stairs that lead up to the roof." Based on these observations, Mr. Tholburn deemed the building unsafe for Entergy's employees and instructed employees not to return to the property to look at (work on) Entergy's facilities.

Afterward, on October 9, 2017, Mr. Tholburn emailed several Entergy employees from various departments to schedule an on-site meeting the next day on Borden's premises to view and discuss an "electrical / environmental hazard at the customers [sic] location." Mr. Tholburn's email explained that the feed for the abandoned building is located on the roof and through the years it has become "very hazardous for employees to access and maintain. On top of that hazard[,] it is also an ongoing environmental hazard." Mr. Tholburn suggested "putting [their] heads together" to come up with a plan to "correct these hazards[.]"

During his deposition, Mr. Tholburn explained his observation regarding an "electrical / environmental hazard" referred to the physical condition and location of Borden's building. On the "environmental side," Mr. Tholburn noticed the drainage was clogged inside the fenced area where Entergy's transformers were located; he observed standing water with an oil sheen. Mr. Tholburn testified this needed to be cleaned but was not hazardous to Entergy's employees "unless you swim in it." As far as the electrical hazard, Mr. Tholburn explained, "it's not more so the electrical

7

hazard, just the access to - - to work on it." Mr. Tholburn confirmed, other than the problems with Borden's property and the difficulty and hazards with accessing Entergy's facilities, nothing else was dangerous or hazardous to Entergy's employees. Mr. Tholburn believed Borden's property itself, not Entergy's facilities, to be a hazardous place to work. Entergy presented plans to Borden for alternative sources of power in December 2017; however, for reasons not established in the summary judgment record, the plan was never implemented.

Thus, in its motion for summary judgment, Entergy maintained the only evidence that establishes how Mr. Cunningham sustained an electrical shock shows he trespassed into Entergy's secured, restricted area and came within one-fourth inch of Entergy's overhead energized line. Entergy asserted, when an electrical contact cannot be reasonably anticipated, it is not within the scope of any duty owed by Entergy because there is no ease of association between the risk presented by its conduct under the overall circumstances and resulting injuries. See *Fleniken v. Entergy Corp.*, 2000-1824 (La. App. 1st Cir. 2/16/01), 780 So.2d 1175, 1184, *writs denied*, 2001-1268, 2001-1305, 2001-1317 (La. 6/15/01), 793 So.2d 1250, 1253, 1254. Entergy also argued its facilities were secured and inaccessible to any person acting reasonably and with due regard for his own safety. Considering its compliance with all NESC safety measures and Mr. Cunningham's actions, Entergy asserted Mr. Cunningham could not prove its facilities were defective or posed an unreasonable risk of harm. See La. C.C. arts. 2315, 2316, 2317, and 2317.1; *Miller v. Albertson's Companies, LLC*, 2023-0527 (La. App. 1st Cir. 12/27/23), 381 So.3d 84, 90.

Mr. Cunningham opposed Entergy's motion, asserting a genuine issue of material fact remains as to whether he was an invitee, which Mr. Cunningham maintained is "fatal" to Entergy's motion for summary judgment. Mr. Cunningham asserted Entergy "knew about the dangerous condition of the transformer and the property itself" but did not take any action to prevent his injuries. Mr. Cunningham

8

further asserted Entergy had a duty to warn of the unreasonably dangerous and hidden dangers related to its transformers and had actual knowledge of the "imminent danger from the condition of the property." Yet, Entergy failed to warn Mr. Cunningham, took no action, and continued to supply electricity to Borden's premises. Mr. Cunningham asserted Entergy showed an "extreme" lack of care with the electrical and environmental hazards on the property. To support his opposition, Mr. Cunningham pertinently relied on Entergy's responses to his requests for admission and focused on Mr. Tholburn's October 9, 2017 email wherein he noted the "electrical / environmental hazard" on Borden's premises. See La. C.C.P. art. 966(A)(4).

The trial court granted Entergy's motion for summary judgment in August 2023 at the conclusion of the contradictory hearing, finding Entergy did not owe a duty to Mr. Cunningham and took steps to secure its facilities. A judgment in conformity with this ruling was signed on September 25, 2023, dismissing all claims asserted by Mr. Cunningham against Entergy with prejudice.[8] Mr. Cunningham timely filed this appeal.

## DISCUSSION

In a single assignment of error, Mr. Cunningham asserts the trial court erred by granting Entergy's motion for summary judgment, because genuine issues of material fact remain "concerning the cause of the accident, particularly regarding hazardous transformers owned by Entergy[.]"[9] However, there is no evidence to establish that a genuine issue of material fact remains regarding how Mr. Cunningham sustained an electrical shock. Entergy offered the only evidence on

---

[8] Borden also filed a motion for summary judgment, which was granted in a judgment signed on September 25, 2023. Mr. Cunningham's appeal from the judgment in favor of Borden was allotted to a different panel of this court and assigned docket number 2024-0104.

[9] A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. See Seal v. Louisiana Farm Bureau Mutual Ins. Co., 2021-0988 (La. App. 1st Cir. 3/16/22), 341 So.3d 659, 662.

this issue, which establishes Mr. Cunningham entered the fenced area where Entergy's facilities were located and came within one-fourth inch of Entergy's overhead electrical distribution line. Thus, we consider whether the trial court properly granted summary judgment, dismissing Mr. Cunningham's premises liability, negligence, and gross negligence causes of action against Entergy.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Corbajal v. Chris Owens French Quarter Parade, LLC*, 2024-00191 (La. 5/21/24), 385 So.3d 236, 237-38. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Corbajal*, 385 So.3d at 238.[10]

***Applicable Legal Principles***

Pursuant to La. C.C. arts. 2315, 2316, 2317, and 2317.1, the general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. *Miller*, 381 So.3d at 90.

---

[10] The burden of proof on a motion for summary judgment rests with the mover. However, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense if it will not bear the burden of proof at trial on the issue before the court in the motion. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P art. 967(B); *Corbajal*, 385 So.3d at 238. Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Corbajal*, 385 So.3d at 238.

Principles of negligence, including the duty-risk analysis, apply to cases of injury occurring because of contact with overhead power lines.[11] *Foley v. Entergy Louisiana, Inc.*, 2006-0983 (La. 11/29/06), 946 So.2d 144, 154. To establish the liability of an electric utility company using the duty-risk analysis, the plaintiff has the burden of proving: (1) the defendant power company owed a duty to the plaintiff; (2) the power company breached that duty; (3) the power company's conduct was a cause-in-fact of the plaintiff's injuries; (4) that the power company's substandard conduct was a legal cause of plaintiff's injuries; and (5) the plaintiff suffered actual damages. *Foley*, 946 So.2d at 154. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Lafayette Steel Erector, Inc. v. G. Kendrick, LLC*, 2022-0892 (La. App. 1st Cir. 8/29/23), 375 So.3d 464, 474, *writ denied*, 2023-01316 (La. 12/19/23), 375 So.3d 414.

Given the inherently dangerous nature of electricity, electric companies that use and maintain high voltage power lines are required to exercise the utmost care to reduce hazards to life as far as is practicable. *Foley*, 946 So.2d at 154, citing *Simon v. Southwest Louisiana Electric Membership Corporation*, 390 So.2d 1265, 1267 (La.1980). An electric company is held to the standard of a reasonable person with superior attributes and is required to recognize there will be a certain amount of negligence that must be anticipated. An electric company has an obligation to make reasonable inspections of wires and other instrumentalities to discover and remedy hazards and defects. This duty includes the obligation to inspect its lines to determine if uninsulated high voltage lines pose a risk of harm, and if the utility relies on insulation by isolation, it has a duty to make certain its lines remain isolated. *Foley*, 946 So.2d 154-55.

---

[11] In light of our finding that Mr. Cunningham cannot succeed on a negligence cause of action against Entergy, we pretermit discussion of Mr. Cunningham's cause of action for gross negligence, which requires a heightened showing of negligence. See *Listach*, 328 So.3d at 455 (Gross negligence is the entire absence of care that amounts to complete neglect of the rights of others.)

If it should be reasonably anticipated that persons may come into contact with electric lines, the owner and/or operator of those lines is required to insulate them or to give adequate warning of the danger, or to take other proper and reasonable precautions to prevent injury. *Foley*, 946 So.2d at 154; *Simon*, 390 So.2d at 1267. However, an electric company is not under a duty to safeguard against occurrences that cannot be reasonably expected or contemplated. Operators of power lines are not required to anticipate every possible accident that may occur and are not the insurers of safety of persons moving around power lines in the course of everyday living. *Foley*, 946 So.2d at 154; *Simon,* 390 So.2d at 1267-1268.

When an accident or occurrence involving an electrical line could not have been reasonably anticipated, it is not within the scope of the duty owed by the electric company to the injured party because there is no ease of association between the risk presented by the electric company's conduct under the overall circumstances and the resulting injury. *Foley*, 946 So.2d at 154. The determination of legal cause/scope of the duty involves a purely legal question. *Malta v. Herbert S. Hiller Corp.*, 2021-00209 (La. 10/10/21), 333 So.3d 384, 399.

***Undisputed Facts***

In his appellant brief, Mr. Cunningham asserts Entergy knew Borden's premises, as well as the transformers located there, were "extremely hazardous." Mr. Cunningham further asserts a genuine issue of material fact remains concerning whether he was invited onto *Borden's premises* (to apply for a job), where Entergy "had a duty of care to all employees and invitees to provide a safe electrical system on the premises." (Emphasis omitted.) Neither argument has merit.

During his deposition, Mr. Cunningham acknowledged he had no authority or permission to be within Entergy's secured area, and none of the potential jobs Mr. Cunningham sought to inquire about related to electrical work. There is no genuine issue of material fact as the evidence clearly establishes Mr. Cunningham was not *Entergy's* invitee.

12

Mr. Cunningham offered no evidence to establish Entergy's transformers or any of its equipment were "extremely hazardous" or unreasonably dangerous, beyond the inherent, obvious danger associated with high voltage electrical equipment. Mr. Cunningham relies on Mr. Tholburn's October 9, 2017 email to support his argument; however, Mr. Tholburn testified the building, not Entergy's electrical facilities, presented a hazard.

Additionally, Entergy's facilities were on the roof and secured behind a fence and, to Entergy's knowledge, a locked gate. Warning signs were posted on the fence and the gate, alerting anyone who ventured onto the roof of the danger of the electrical equipment within the fenced area. Although the photographs in the summary judgment record are grainy and of poor quality, they show Entergy's facilities were obviously electrical in nature and contained more than an "innocent looking wire." See Foley, 946 So.2d at 157, quoting Dobson v. Louisiana Power and Light Company, 567 So.2d 569, 572 n.1 (La.1990) (stating a high-tension transmission wire is one of the most dangerous things known to man, and its danger is often hidden in "an innocent looking wire...For the average citizen there is no way of knowing whether the wire is harmless or lethal until it is too late to do anything about it.") Considering the undisputed evidence establishing the location and nature of Entergy's facilities, it could not be reasonably anticipated that someone would disregard the posted warnings and the visible barriers to access Entergy's isolated electrical facilities.

This is precisely what Mr. Cunningham did – disregarded the posted warning signs and the fence and accessed a restricted area, which he knew posed a serious risk to his safety. Although Mr. Cunningham does not recall seeing the posted "DANGER HIGH VOLTAGE" warning signs, he acknowledged such a sign indicates "some kind of high voltage in the area" and agreed "[i]t tells you to be extra careful." Referring to Entergy's facilities, Mr. Cunningham stated he "wouldn't go in there" because "it's full of transformers." Mr. Cunningham was taught to "stay

13

away" from high voltage electrical lines during his previous employment with BellSouth, which required him to work near electrical lines. Mr. Cunningham stated, "I know enough about electricity[.] I wasn't going to touch wires on a transformer[.]" For this reason, Mr. Cunningham "figured it had to arc." Mr. Cunningham presented no evidence to contradict Mr. May's opinion that he had to come within one-fourth inch of Entergy's distribution line, which was 10 feet above the ground.

After a *de novo* review of the summary judgment record, we find Entergy satisfied its summary judgment burden of proof by establishing the absence of factual support for one or more essential elements of Mr. Cunningham's causes of action. In response, Mr. Cunningham failed to produce evidence of a material factual dispute; thus, La. C.C.P. art. 966 mandates the granting of Entergy's motion for summary judgment. See La. C.C.P. art 966(A)(3); *Corbajal*, 385 So.3d at 239.

## DECREE

For the foregoing reasons, we affirm the judgment granting the motion for summary judgment in favor of Entergy Louisiana, LLC and dismissing Jared Cunningham's suit against Entergy with prejudice. All costs of this appeal are assessed against Jared Cunningham.

**AFFIRMED.**